NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0497n.06
Case No. 08-3063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 16, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| TERRY JOHNSON, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Terry Johnson appeals the district court's

denial of his motion to suppress a firearm and drugs found on him in a search incident to his arrest

for driving with a suspended license. Terry argues that the arresting officer lacked reasonable

suspicion to ask him for his driver's license after the officer arrested Terry's brother — a passenger

in the truck Terry was driving — on an outstanding warrant. Because the officer did not seize Terry

until after he had probable cause to believe that Terry had committed a misdemeanor in his presence,

we affirm.

**I.**

On October 16, 2006, Terry and his brother Steve Johnson were traveling in Steve's pickup

truck on Mulberry Street in Mansfield, Ohio, when they stopped the truck in the street to talk to some

friends standing on the sidewalk. Richland County Deputies Coughenbaugh and Snay, traveling in

1

a patrol car in the opposite direction on the two-lane street, passed by the Johnsons. Coughenbaugh asked Snay to check the truck's license plate number on the onboard computer. The check revealed a possible arrest warrant for Steve. Coughenbaugh turned the patrol car around and headed back to find the truck.

The deputies spotted the truck parked near an auto parts store. Upon entering the store, Deputy Coughenbaugh asked for the owner of the truck, and Steve identified himself as the owner. After the deputies confirmed that Steve was the individual wanted on the warrant, they asked him to step outside, and Terry followed. As he was being arrested, Steve handed Terry his personal belongings, and Terry then went back inside the store.

When Deputy Coughenbaugh pointed out to Deputy Snay that Terry had been driving the truck, Snay went inside the store and asked Terry for his driver's license. Terry responded that he did not have his license with him and instead provided his social security number. Snay checked the number, learned that Terry's license was suspended, and decided to arrest him. As Snay approached, Terry appeared nervous and "bladed" his body, pivoting so that his body was perpendicular to Snay's — a maneuver Snay recognized as one that officers are taught as a way to protect their sidearms from assailants. Snay handcuffed Terry, and Terry announced that he had a handgun. Snay searched him and found a loaded semi-automatic pistol and packages of crack and powder cocaine.

After he was indicted on charges of possessing crack and powder cocaine with intent to distribute and of being a felon in possession of a firearm, Terry filed a motion to suppress the drugs and firearm found in the search incident to his arrest. The district court held several evidentiary hearings, and ultimately denied Terry's motion. Terry entered a conditional guilty plea on all counts,

preserving the right to appeal the denial of his suppression motion. The district court sentenced Terry to a total of 120 months' imprisonment, and this appeal followed.

**II.**

In considering a district court's denial of a motion to suppress evidence, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005). We must "consider[ ] the evidence in the light most favorable to the government." *Id.* "'[A] denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason.'" *United States v. Hardin*, 539 F.3d 404, 417 (6th Cir. 2008) (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).

**III.**

Terry argues that Deputy Snay lacked reasonable suspicion to ask him for his driver's license. But so long as a reasonable person in Terry's position would have felt free "'to disregard [the deputy] and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). The Supreme Court has made it clear that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Id.* Nor does "interrogation relating to one's identity or a request for identification by the police . . . by itself, constitute a Fourth Amendment seizure." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984). "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.'" *Bostick*, 501 U.S. at 434 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

3

Terry contends that his encounter with Deputy Snay was not consensual because a reasonable person would not have felt free to ignore an officer who had just arrested his brother. But Steve was arrested on an outstanding warrant that had nothing to do with Terry. Although the deputies asked Steve to step outside so he could be taken into custody, the officers did not issue any orders to Terry. Terry voluntarily followed his brother outside to collect Steve's belongings, and then reentered the store. When Deputy Coughenbaugh told Deputy Snay that Terry had been driving the truck, Deputy Snay went inside and asked for Terry's driver's license. Terry explained that he did not have his driver's license with him and instead volunteered his social security number. Terry points to nothing in the record, and we have found nothing, to suggest that Snay raised his voice, displayed a weapon, restricted Terry's movement, accused Terry of a crime, or otherwise made a display of authority that would have indicated that Terry was not free to end the encounter. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.").

Indeed, Deputy Snay's actions here are even less intimidating than the officers' actions in *Bostick.* In that case, "[t]wo officers, complete with badges, insignia and one of them holding a recognizable zipper pouch, containing a pistol" boarded a bus and asked Bostick if they could inspect his ticket and identification. 501 U.S. at 431-32. The officers then explained that they were looking for illegal drugs and asked Bostick for consent to search his luggage. *Id.* at 432. The Supreme Court held that even though this encounter occurred in a cramped bus and Bostick did not feel free to leave

4

(because he did not want to be left behind), it was not a seizure because *the officers* did not restrict Bostick's movement. *Id.* at 435-36.

Just as Bostick's confinement was "the natural result of his decision to take the bus," *id.* at 436, any confinement Terry experienced in the lobby of the store was the result of his decision to shop there. And here, Deputy Snay did not suggest to Terry that he suspected him of a crime or that he was looking for contraband; nor did he ask to search Terry. He simply asked Terry for his driver's license, and Terry volunteered other identifying information. "Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, [an officer's] request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment." *United States v. Peters*, 194 F.3d 692, 698 (6th Cir. 1999); *see also United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) (officer's request to see Campbell's identification did not constitute a seizure).

Once Deputy Snay discovered that Terry had been driving with a suspended license, he had probable cause to arrest him. *See Virginia v. Moore*, 128 S.Ct. 1598, 1604 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."). He then discovered the handgun and drugs during a valid search incident to the arrest. *See Campbell*, 486 F.3d at 955 ("Once a lawful arrest has been made, the police officer is permitted to search the individual."). The district court was correct to deny the motion to suppress.

**CONCLUSION**

Because the officer did not seize Terry until after he had probable cause for the arrest, we

**AFFIRM** the judgment of the district court.

**Rogers, J., concurring.** I concur in the result, but do so because the officers were justified in questioning and searching Terry Johnson even without his consent.

When Officers Snay and Coughenbaugh first encountered Terry and Steve Johnson, their car was stopped in the middle of the road in violation of the traffic code. After running the car's plates and finding an outstanding warrant for the car's owner, the officers followed the car to the auto parts store and arrested Steve.

Terry, whom Coughenbaugh identified as the car's driver, argues that Snay lacked reasonable suspicion to ask Terry for his driver's license. However, having observed Terry commit a minor traffic infraction, Snay was justified in detaining Terry and requesting identification. *See United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Then, as the majority explains, once Snay discovered that Terry had been driving with a suspended license, Snay had probable cause to arrest Terry. Snay then discovered the handgun and drugs during a valid search incident to the arrest.

Terry Johnson argues that he did not commit a traffic infraction which would justify the request for identification because stopping the car in the middle of the road did not actually impede the flow of traffic. Johnson failed to raise this issue below, so this court would only overturn the district court's finding that Johnson did commit a traffic infraction if that finding constituted plain error. *United States v. Branham*, 97 F.3d 835, 841 (6th Cir. 1996). It is not clear from the Ohio statute that actual impeding of traffic is necessary for a violation when a driver stops his car in the middle of the road. *See* Ohio Rev. Code § 4511.22. The district court's finding should therefore stand.

Given that Officer Snay was justified at each level of questioning and search, affirmance is required regardless of Johnson's consent.